**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| STRATEGIC SYSTEMS & TECHNOLOGY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>Defendant. | Civil Action No.<br>1:25-CV-07129-VMC |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW Plaintiff STRATEGIC SYSTEMS & TECHNOLOGY CORPORATION ("SSTC") and hereby files this Response in Opposition to Defendant Travelers Property Casualty Company of America's ("Travelers") Motion for Summary Judgment and Reply in Support of SSTC's Motion for Partial Summary Judgment and shows the Court as follows:

## I. INTRODUCTION

SSTC's Motion for Partial Summary Judgment presents a narrow legal issue: whether SSTC's loss is covered under the Policy's Deluxe Property – Personal Property in Transit provision, Section A.1.e.(4)(c).

Travelers' cross-motion does not identify any policy language negating the central point raised in SSTC's opening brief: the transit provision expressly covers loss resulting from the unintentional acceptance of a fraudulent "Bill of Lading, order or shipping receipt." Instead, Travelers asks the Court to rewrite that provision by treating "order" as though it were not there, and by narrowing "shipping receipt" (a term the Policy never defines) in a way that is only self-serving to Travelers.

The record remains straightforward. SSTC accepted fraudulent purchase orders and shipping instructions from an individual falsely claiming to act for JELD-WEN, tendered its goods for shipment in reliance on those documents, and never recovered the goods. Travelers accepted that the loss resulted from fraud and paid the $25,000 False Pretense sublimit, but refused to apply the broader transit coverage.

Travelers' motion should be denied, and SSTC's Motion for Partial Summary Judgment should be granted.

## II. STATEMENT OF FACTS

SSTC incorporates the facts set forth in its Statement of Undisputed Material Facts filed in support of its Motion for Partial Summary Judgment.

Briefly, an individual identifying himself as "Alan Machmiller" represented that he was acting for JELD-WEN, requested credit, submitted purchase orders and shipping instructions that appeared legitimate, and induced SSTC to ship goods in reliance on those materials. The goods were delivered pursuant to those fraudulent orders and were never recovered.

Travelers investigated the claim, accepted that the loss resulted from fraud, and paid $25,000 under the False Pretense Endorsement. SSTC then directed Travelers to Section A.1.e.(4)(c) and requested coverage under the Personal Property in Transit coverage.

## III. STANDARD OF REVIEW

Summary judgment is appropriate only where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Again, insurance policies in Georgia are contracts, and disputes concerning their construction are well suited for adjudication on summary judgment because interpretation of a contract is ordinarily a question of law for the court. Auto-Owners

Ins. Co. v. Neisler, 334 Ga. App. 284, 286 (2015). Unambiguous policy terms require no construction and must be enforced according to their plain meaning. Id. Contractual provisions are ambiguous only when they are "susceptible to more than one reasonable meaning, even if each meaning is logical and reasonable." Id.

When ambiguity exists in insurance contracts, Georgia law requires that ambiguities be strictly construed against the insurer as the drafter, exclusions from coverage the insurer seeks to invoke be strictly construed, and coverage in the contract is to be read in accordance with the reasonable expectations of the insured. Id. at 287. Contracts must be read as a whole, and constructions that render policy language meaningless are disfavored. O.C.G.A. § 13-2-2(4); Atlanta Dev., Inc. v. Emerald Capital Invs., LLC, 258 Ga. App. 472, 478 (2002).

## IV. ARGUMENT AND CITATION OF AUTHORITY

### a. Georgia law requires the Policy to be read according to its text, ordinary meaning, and the reasonable expectations of the insured.

Under Georgia law, courts apply the ordinary rules of contract construction when interpreting insurance policies. Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 269 Ga. 326, 327 (1998). The construction of a contract is a question of law for the Court, O.C.G.A. § 13-2-1, and every insurance contract must be construed according to the entirety of its terms and conditions, O.C.G.A. § 33-24-16.

As with other contracts, policy language must be given its usual and common

meaning, the policy must be construed as a whole, and constructions that render words meaningless are disfavored. O.C.G.A. § 13-2-2(2), (4), (6). If the policy language is clear and unambiguous, the Court must enforce it according to its terms. Reeves v. Allstate Ins. Co., 371 Ga. App. 474, 477 (2024). But if a provision is susceptible to more than one reasonable meaning, it is ambiguous and must be construed against the insurer and in favor of coverage. Joseph v. Certain Underwriters at Lloyd's London, 356 Ga. App. 178, 184 (2020); Richards v. Hanover Ins. Co., 250 Ga. 613, 614 (1983).

That applies with particular force here since Travelers seeks to narrow coverage through undefined policy language. Exclusions and limitations on coverage must be strictly construed, and unless the limiting language is clear and unequivocal, it must be read liberally in favor of the insured. Richards, 250 Ga. at 615; Travelers Indem. Co. v. Whalley Constr. Co., 160 Ga. App. 438, 440 (1981). Insurance policies are also to be read in accordance with the reasonable expectations of the insured, and "as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." Joseph, 356 Ga. App. at 180; Nationwide Mut. Fire Ins. Co. v. Collins, 136 Ga. App. 671, 675 (1975).

Finally, Georgia courts prefer the natural and obvious meaning of policy language over a strained or hidden one. Truitt Oil & Gas Co. v. Ranger Ins. Co., 231

Ga. App. 89, 90 (1998). Those principles foreclose Travelers' attempt to rewrite Section A.1.e.(4)(c) by reading the word "order" out of the coverage grant and by assigning an artificially narrow and self-serving meaning to the undefined phrase "shipping receipt."

**b. The Policy Expressly Covers Losses Caused by the Unintentional Acceptance of Fraudulent Orders.**

SSTC's opening brief addressed the central point, and SSTC incorporates that argument here. The relevant coverage grant applies to "loss of or damage to Covered Property resulting from the ***unintentional acceptance of any fraudulent*** Bill of Lading, ***order*** or ***shipping receipt***..." (emphasis added).

Travelers' response never meaningfully grapples with the word "order." Instead, Travelers argues as if the provision can apply ***only*** where there is fraud involving a traditional transportation document or some post-shipment diversion by a carrier or warehouse.

But that is not what the Policy says. The Policy expressly includes fraudulent orders and fraudulent shipping receipts, and Georgia law requires the Court to construe the Policy as a whole and avoid any interpretation that renders that language meaningless. Atlanta Dev., 258 Ga. App. at 478.

Here, the loss resulted from SSTC's good-faith acceptance of fraudulent purchase orders and shipping instructions submitted by a person falsely purporting

to be authorized to act for JELD-WEN. That is the very circumstance the coverage grant contemplates. Travelers' interpretation would improperly collapse the Policy's separate references to a "Bill of Lading, order or shipping receipt" into "Bill of Lading" alone, or at most a bill of lading and similarly formal transportation documents. The Court should reject any construction that reads the words "order" and "shipping receipt" out of the Policy.

**c. "Shipping receipt" is undefined, so its ordinary meaning controls, and any reasonable ambiguity must be resolved in SSTC's favor.**

Travelers' voluntary-parting argument depends on a narrow reading of the phrase "shipping receipt," but nowhere in the Policy is that term defined. And because it is undefined, the Court must give it its usual and common meaning as a reasonable person in the position of the insured would understand it. O.C.G.A. § 13-2-2(2); Collins, 136 Ga. App. at 675. Nothing in the Policy limits "shipping receipt" to a particular formal transportation document or to the insurer's preferred and self-serving meaning.

At minimum, the term "shipping receipt" reasonably encompasses documentation associated with the shipment or delivery of goods. That is especially true where the same coverage grant separately refers to a "Bill of Lading, order or shipping receipt," which shows the Policy contemplates a broader category of

shipment-related documents rather than treating each term as synonymous with a bill of lading. Travelers' contrary reading which effectively equates "shipping receipt" with "Bill of Lading" and deprives the additional language of independent meaning, is the sort of strained and hidden construction Georgia courts reject. Truitt Oil, 231 Ga. App. at 90.

And, even if Travelers' narrower reading is also possible, that only confirms ambiguity. Where policy language is susceptible to more than one reasonable meaning, it must be construed against the insurer and in favor of coverage. Joseph, 356 Ga. App. at 185; Richards, 250 Ga. at 614.

**d. Travelers' "Voluntary Parting" Theory mischaracterizes both the facts and the structure of the Policy.**

Travelers repeatedly frames the loss as SSTC's intentional choice to extend credit and release goods. That framing ignores the nature of the loss and the structure of the Policy itself.

First, Travelers already accepted that the claim involved a covered fraud-based property loss by paying for such loss under the False Pretense Endorsement. That endorsement applies to "direct physical loss" of covered property where the insured parts with the property due to a fraudulent scheme or false pretense. Travelers cannot both acknowledge a covered fraud-based physical loss and then reframe the same loss as merely an uncovered credit or receivable problem to defeat

transit coverage.

Second, SSTC did not knowingly release its inventory to an unauthorized recipient. It released goods because it was induced to do so by receiving fraudulent orders and fraudulent shipping information. And, this is the exact scenario that is covered under the Policy, and upon which SSTC seeks coverage.

Third, Travelers' construction would create a conflict where none is required. The False Pretense Endorsement does not say it is the exclusive source of coverage for every fraud-induced shipment loss. To the contrary, it states that its $25,000 limit is "part of, and not in addition to," the limit that applies to the lost or damaged Covered Property. At minimum, that language does not clearly eliminate the possibility that another coverage part, including the transit provision, also applies.

**e. Travelers is not entitled to summary judgment on SSTC's bad-faith claim.**

Travelers argues that SSTC cannot maintain a claim under O.C.G.A. § 33-4-6 because the September 8, 2025 correspondence was not a sufficient demand and any later demand was untimely or otherwise deficient. But on this record, Travelers has not established that point as a matter of law.

On September 8, 2025, SSTC specifically quoted Section A.1.e.(4)(c), disputed Travelers' characterization of the claim as merely an "economic loss," identified the fraudulent shipping information, and asked Travelers to explain why

the Voluntary Parting carve-back did not apply. Then, on October 20, 2025, counsel for SSTC sent written demand correspondence expressly invoking O.C.G.A. § 33-4-6 and demanding payment before suit and providing the requisite extension of time measured from SSTC's early written request for coverage. Travelers then failed to timely respond or otherwise pay the claim, thus requiring SSTC to initiate this suit. At minimum, those communications create a factual issue as to whether Travelers received sufficient written notice of SSTC's coverage position and a legally sufficient pre-suit demand.

Under Georgia law, a bad-faith claim fails where there is no evidence of a proper pre-suit demand. Stedman v. Cotton States Ins. Co., 254 Ga. App. 325, 328-29 (2002). But unlike in Stedman, this record contains evidence of an express written pre-suit demand with earlier written correspondence squarely identifying the coverage basis SSTC contended Travelers was ignoring. Whether those communications satisfied the statute is not an issue that can be resolved ***against*** SSTC as a matter of law on summary judgment.

Nor has Travelers shown that its refusal to pay was reasonable as a matter of law. By September 2, 2025, Travelers had already paid the $25,000 False Pretense sublimit, thereby acknowledging that the loss arose from a fraudulent scheme involving SSTC's parting with goods. It nevertheless denied additional coverage

under the Personal Property in Transit provision based on its own narrow and self-serving construction of the Policy. Whether that refusal remained reasonable after SSTC's September 8 explanation and October 20 formal demand from counsel presents a factual issue not appropriate for summary judgment.

At minimum, genuine issues of fact remain as to whether SSTC made a sufficient written demand before suit and whether Travelers' refusal to pay thereafter was in bad faith. Travelers therefore is not entitled to summary judgment on SSTC's bad-faith claim.

**f. SSTC is entitled to partial summary judgment on the limited coverage issue presented in its motion.**

SSTC moved only on the issue of coverage under the Policy. For the reasons set forth in SSTC's opening brief and above, Section A.1.e.(4)(c) applies according to its text. Travelers' response does not identify any unambiguous language foreclosing coverage as a matter of law. And to the extent any ambiguity remains in the interaction between "order," "shipping receipt," and the Voluntary Parting carve-back, Georgia law requires that ambiguity to be construed in favor of SSTC and coverage. Neisler, 334 Ga. App. at 287; Staton, 286 Ga. at 25.

## V. CONCLUSION

For the foregoing reasons, Travelers' Motion for Summary Judgment should be denied and SSTC's Motion for Partial Summary Judgment should be granted.

Submitted this 16th day of March 2026.

**ANDERSEN, TATE & CARR, P.C.**

*/s/ Tyler A. Dillard*
Tyler A. Dillard
Georgia Bar No.: 115229
tdillard@atclawfirm.com
Counsel for Plaintiff

## LR 7.1 D CERTIFICATION

This is to certify that the within and foregoing has been prepared with one of the font and point selections approved by the Court in LR 5.1C: Times New Roman 14 point.

## CERTIFICATE OF SERVICE

This is to certify that I have this day presented the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** to the Clerk of Court for filing and uploading to the CM/ECF system, which will send notice to the counsel of record.

This 16th day of March 2026.

**ANDERSEN, TATE & CARR, P.C.**

*/s/ Tyler A. Dillard*
Tyler A. Dillard
Georgia Bar No.: 115229

1960 Satellite Blvd., Suite 4000
Duluth, Georgia 30097
770-822-0900
770-236-9759 (fax)
tdillard@atclawfirm.com